A05A0064. GOODE v. CITY OF ATLANTA.
(617 SE2d 210)

MIKELL, Judge.

Jamie Goode filed the underlying action against the City of Atlanta (the "City") after a water main near his residence at 2414 Glenwood Drive ruptured.[1] According to Goode, an excessive amount of dirt under the foundation of his home was washed away when the main ruptured, and water and mud flooded his basement, damaging his real and personal property. He alleged that the water main rupture was caused by the City's negligent repair of a nearby sewer cave-in approximately one month earlier and by the soil erosion resulting from that excavation and repair. Goode's original complaint contained only a negligence claim against the City; however, he filed an amended complaint adding a nuisance claim after the City moved for summary judgment. The trial court entered summary judgment in favor of the City, and this appeal followed. Finding no error, we affirm.

---

[1] Goode also named as a defendant United Water Services Unlimited Atlanta, LLC ("United Water"). After reaching a settlement, Goode dismissed his claim against United Water with prejudice.

> When there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law, summary judgment is proper. A de novo standard of review lies as to an appeal from a grant of summary judgment, OCGA § 9-11-56 (c), and we must consider the evidence in the light most favorable to the nonmovant.

(Citation omitted.) *Vito v. Dhillon*, 269 Ga. App. 899, 901 (605 SE2d 602) (2004).

So viewed, the record shows that the damage to Goode's property was caused by a water main rupture on September 4, 2000. Prior to the rupture, the City had addressed a cave-in at a sewer manhole approximately 16 feet from the water main by placing a metal plate over the pothole to prevent damage to vehicles passing over it. According to the deposition testimony of Reza Bavani, a civil engineer with United Water, the metal plate allowed surface water to flow into the soil beneath the street.

The sewer cave-in was back-filled and the street repaired over the course of three days in August 2000. Jerry Childers, the service supervisor at the City of Atlanta Sewer Division, deposed that he supervised the repair. He described the sewer cave-in as "a 12-inch void in the blacktop right close to the manhole" that was between two and three feet deep at the time of the repair. Childers deposed that City workers dug an approximately eight-foot-deep hole around the cave-in in order to repair the sewer.

Morris Willis, Jr., the chief supervisor of the City crew that performed the repair, deposed that in the course of back-filling the hole caused by the sewer cave-in and subsequent excavation, it was necessary to push dirt into the hole and then to "tamp" or compact it down. He explained that the dirt was tamped in three-foot intervals, which he described as being standard. In his deposition, Childers testified that eight-inch lifts were generally standard in the tamping process and that, at most, he imagined that the crew would have tamped twelve to sixteen inches of dirt at a time at this particular repair site. In response to a question posed by Goode's counsel, Childers testified that "[i]n certain circumstances" it would be "bad" to use three-foot lifts in the tamping process. Goode attributes the water main rupture which damaged his home to the allegedly negligent repair of the sewer system.

According to Allen Moore, the Construction Section Manager for the City of Atlanta Watershed Management, prior to the rupture of the water main on September 4, 2000, the City had not received any complaints from Goode or from any other nearby residents regarding the sewer system leaking or flooding in any way. In his affidavit, Moore stated that the only complaint received by the City regarding

Goode's neighborhood concerned the metal plate on the road causing noise when automobiles passed over it. According to Moore, the plate was intended to prevent damage to vehicles by covering the pothole, not to remedy any alleged sewer problem.

1. The trial court based its grant of summary judgment to the City in part on its conclusion as a matter of law that "recovery under a theory of negligence is barred by the doctrine of governmental immunity." Goode does not appear to challenge the court's treatment of his negligence claim; however, as his appeal concerns the grant of summary judgment to the City, we will briefly address this issue.

The trial court properly held that Goode's negligence claim against the City was barred by sovereign immunity as a matter of law. Under Georgia law, a municipality is not liable for the negligent acts of its employees in the performance of purely governmental functions. *Roberts v. Mayor &c. of Savannah*, 54 Ga. App. 375 (1) (188 SE 39) (1936); OCGA § 36-33-1 (a). "The power to construct and maintain a sewer and drainage system is a governmental function." (Citation omitted.) *City of Rome v. Turk*, 235 Ga. 223, 224 (1) (219 SE2d 97) (1975); accord *Earnheart v. Scott*, 213 Ga. App. 188, 189 (1) (444 SE2d 128) (1994). See also *City Council of Augusta v. Cleveland*, 148 Ga. 734, 735 (1)-(3) (98 SE 345) (1919). Thus, pretermitting whether Goode might have a viable negligence claim against a private defendant, his negligence action could not survive against the City based on sovereign immunity.

2. Next, we consider the grant of summary judgment to the City on Goode's nuisance claim. While a municipality is not liable for negligence in the exercise of a government function, "[it] may be held liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function." (Citation and punctuation omitted.) *City of Bowman v. Gunnells*, 243 Ga. 809, 810 (1) (256 SE2d 782) (1979).

> The following factors must be present to show a nuisance: (1) The defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. (A single isolated act of negligence is not sufficient to show such a negligent trespass as would constitute a nuisance.) (2) The act must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious. (3) Failure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition. [Cit.] The latter factor requires either knowledge or notice of the dangerous condition. [Cit.] Although the question of whether

a nuisance exists is normally one of fact, in some cases it can be held as a matter of law that no nuisance exists.

(Punctuation omitted.) *Earnheart*, supra, citing *City of Bowman*, supra at 811 (2) and *Kicklighter v. Savannah Transit Auth.*, 167 Ga. App. 528, 531 (3) (307 SE2d 47) (1983).

In the case sub judice, the trial court concluded as a matter of law, and we agree, that the undisputed evidence failed to satisfy the above factors. With regard to the first and second factors, even assuming, arguendo, that the sewer repair was negligent, an isolated act of negligence cannot form the basis of a nuisance claim. See *Earnheart*, supra, citing *City of Bowman*, supra. Further, the water main rupture, which directly caused the damage at issue, was likewise an isolated event that cannot support a nuisance claim. *City of Atlanta v. Roberts*, 133 Ga. App. 585, 587 (2) (211 SE2d 615) (1974) ("A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated.") (citation and punctuation omitted). We cannot conclude from the record before us that the City was "chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury." (Citations omitted.) *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 426 (3) (i) (249 SE2d 224) (1978). Viewed in favor of Goode as the nonmoving party, the evidence shows at most that the City crew improperly tamped the dirt while back-filling the hole caused by the sewer cave-in and subsequent repair, and that the improper tamping may have led to the water main rupture that damaged Goode's home. The one-time repair cannot be deemed continuous or repetitive.

Finally, the trial court properly concluded as a matter of law that the evidence did not demonstrate that the City had knowledge or notice of the dangerous condition and failed to act in a reasonable amount of time, as required by the third factor of a nuisance claim. *Earnheart*, supra. Moore's affidavit established that the City had not received any complaints about flooding in the vicinity of Goode's home. Goode has failed to point to any evidence demonstrating that the City had notice of the allegedly defective sewer repair or of the risk of rupture due to increased water run-off. Compare *Cannon v. City of Macon*, 81 Ga. App. 310 (58 SE2d 563) (1950).[2] Accordingly, the

---

[2] In *Cannon*, a storm sewer line under the plaintiff's property continually overflowed due to an increased flow of water exceeding the sewer capacity following the paving of certain roads. Id. at 310-312. There, the City had notice of the dangerous condition because over a period of seven years, it had regularly repaired the sewer in question and removed debris from the sewer after every heavy rainfall. Id. at 314-315, 320. Also compare *Town of Fort Oglethorpe v. Phil-*

trial court did not err in granting summary judgment to the City on Goode's nuisance claim.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 8, 2005.

*Drew, Eckl & Farnham, Clayton H. Farnham*, for appellant.

*Hawkins & Parnell, Debra E. LeVorse, David C. Marshall*, for appellee.

---

*lips*, 224 Ga. 834 (165 SE2d 141) (1968), in which our Supreme Court held that knowledge of a defective traffic light for more than two weeks, as well as knowledge of six collisions at that particular intersection on the date that the plaintiff was injured, constituted notice of the dangerous condition. Id. at 838.