A06A0541. CLIVE et al. v. GREGORY et al.
A06A0542. AIM LAND, INC. v. CLIVE et al.
(635 SE2d 188)

BARNES, Judge.

In Case No. A06A0541, Cindy and Jeff Clive appeal the grant of summary judgment to Stewart M. Gregory, a building inspector for Spalding County, on their claims against him for failing to inspect their newly constructed barn, and in Case No. A06A0542, Aim Land, Inc. d/b/a Stringer Lumber Company ("Stringer Lumber"), appeals the denial of its motion for summary judgment on the Clives' negligence claims.

These appeals arise from the collapse of a barn. The complaint alleged that Cindy and Jeff Clive contracted with Alan Pratt and his company Countryside Home Builders to build a home and barn on

their property, and that the construction was to comply with "all rules, regulations, orders, ordinances and laws of government agencies which controlled completion of the work." The home's construction is not part of the dispute. While the Clives were moving in their home, they parked a trailer loaded with their possessions in the barn. As they were doing this, a wind gust blew the barn down, trapping Cindy Clive in the barn and causing her serious injury, and also injuring Jeff Clive and damaging their property.

After the barn collapsed, the Clives discovered that the barn lacked wall bracing which was required by the county code. Also, the siding had been installed on the barn improperly and not according to code. The barn was constructed from a free-hand drawing, provided by the Clives to Pratt, which contained the proposed dimensions of the barn. The drawing, however, did not contain any details about how the barn should be built. Ultimately, the barn was built on footing similar to the house, with 2 x 4 studs placed 24 inches on center, but the barn walls were constructed without any lateral support.

Subsequently, the Clives sued Stewart M. Gregory, the Spalding County Building Inspector; Alan Pratt and Countryside Home Builders[1] (collectively "Pratt"); and Stringer Lumber. Their complaint alleged that Pratt agreed to comply with all rules, regulations, and codes that controlled the building of the house and barn, but the barn was constructed without lateral support even though such support is required by code.

The complaint against Gregory alleged that, even though he was required to do so, Gregory failed to inspect the barn during construction or to make a final inspection. The complaint further alleged that had Gregory inspected the barn he would have seen that the barn had no lateral support, and would have demanded that Pratt complete the barn in accordance with the applicable codes and regulations.[2] Gregory issued the building permits for both structures. The structures were both completed and after a final building inspection of the house, a certificate of occupancy was issued for it. But the barn was never inspected and no certificate of occupancy was issued for it.

The complaint against Stringer Lumber alleged that it sold Pratt the siding to be installed on the barn, and it knew that its siding provided no lateral support for the barn which had no other lateral support. The complaint further alleged that Pratt informed Stringer

---

[1] Alan Pratt and Countryside Home Builders are no longer parties to the case because they declared bankruptcy.

[2] Spalding County has adopted the Standard Building Code which was in effect during the time relevant to this appeal.

Lumber's employees that the customer wanted the barn built that way and Stringer Lumber's employees installed the siding "without any lateral support being added to the barn."

The complaint also alleged that as a result of Stringer Lumber's installation of siding without the barn having lateral support, the barn collapsed causing the Clives' injuries. It further alleged that Stringer Lumber: knew the properties of the siding installed on the barn and what siding should have been installed; knew that the siding installed would not provide lateral support for the barn; knew there was no lateral bracing of the barn when it installed the siding; knew it was foreseeable that the barn would collapse if siding was placed on the barn without the barn having lateral support; ignored the risk of collapse; and installed siding on the barn with no lateral support.

Apparently, it was not the practice of Gregory's office at that time to inspect barns, or to issue certificates of occupancy for barns. According to Pratt, Gregory did not perform a final inspection on the barn, stating that if the barn was constructed like the house, no inspection was needed. Pratt informed the Clives that the house and barn had passed inspection. Gregory testified that an inspection of the barn would have disclosed the deficiencies that caused the barn's collapse. This was confirmed by his assistant. Both testified that they would not have approved the framing of the barn if they had discovered the lack of bracing. According to Gregory, no certificate of occupancy was issued for the barn because one was not requested.

The record contains an affidavit from Clives' expert, a professional engineer, who stated that he was familiar with the Standard Building Code that provides the minimum standards for construction of commercial and residential buildings, that he inspected the collapsed barn and analyzed the potential causes of its collapse by examining the barn's structural components. His conclusion was that "the barn collapsed because the walls of the barn lacked any form of wall bracing," and that such bracing was required by the building code. From his inspection of the barn, he noted that the studs in the barn were 24 inches apart and that the siding was installed using the blind nailing method. Moreover, according to the building code, siding cannot be installed directly to building studs that are spaced more than 16 inches apart and the siding must be fastened at the top and bottom edges ("face nailing"), and not just at the top edge ("blind nailing"). He also reviewed the specifications of the manufacturer of the siding that was installed, and the use of blind nailing was not permitted by those specifications if the studs were more than 16 inches apart. His expert opinion is that the siding was not installed according to the building code and the manufacturer's specifications

and that the "improper installation of the siding on the Clives' barn, coupled with the lack of required wall bracing, contributed to the collapse of the barn."

After the defendants answered denying liability, Gregory and Stringer Lumber moved for summary judgment. After Gregory's motion was granted, the Clives filed this appeal, and Stringer Lumber filed its cross-appeal of the denial of its motion for summary judgment.

## Case No. A06A0541

The Clives contend the trial court erred by granting summary judgment to Gregory based on either official immunity or the lack of legal duty. They also assert that the trial court erred by granting summary judgment to Gregory on Jeff Clive's loss of consortium claim.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Ponder v. Brooks*, 256 Ga. App. 596, 597 (569 SE2d 267) (2002).

1. Gregory's motion asserted that he owed the Clives no legal duty and that he had official immunity because he was a government official performing a discretionary duty. His legal duty argument primarily relied upon *City of Lawrenceville v. Macko*, 211 Ga. App. 312, 315 (2) (439 SE2d 95) (1993), which extended the public duty doctrine to city building inspectors. Under the public duty doctrine, "liability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, except where there is a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual." *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993).

Gregory contends that the rationale for applying the public duty doctrine in cases like this, as stated in *City of Lawrenceville v.*

*Macko*,[3] supra, 211 Ga. App. at 315 (2), supports its validity, and as the Clives have not demonstrated that they had a special relationship with the building inspector, he owed no legal duty to them to inspect their barn. He also contends that *City of Lawrenceville v. Macko*, supra, has never been overruled.

The Clives respond that we cannot apply the public duty doctrine in this case because, in Georgia, that doctrine is applicable only in cases involving police protection. Indeed, our Supreme Court held that the public duty doctrine adopted in *City of Rome v. Jordan*

> was directed squarely and only at the duty owed by a governmental entity to provide police protection to individual citizens. . . . We believe that difference in the duties warrants limitation of the public duty doctrine adopted in *Jordan* to the situation involved there, the provision of police services.

*Dept. of Transp. v. Brown*, 267 Ga. 6, 8-9 (3) (471 SE2d 849) (1996). The Court later ruled that its opinion in *City of Rome* was directed " 'only at the duty owed by a governmental entity to provide police protection to individual citizens' and that the nature of that case 'warrants limitation of the public duty doctrine adopted in *City of Rome* to the situation involved there.' [Cit.]" (Punctuation omitted.) *Hamilton v. Cannon*, 267 Ga. 655, 656 (1) (482 SE2d 370) (1997). This holding was further refined in *Rowe v. Coffey*, 270 Ga. 715, 716 (515 SE2d 375) (1999), to state that the " 'public duty doctrine adopted in *City of Rome* is limited to the situation in that case and thus does not apply outside the police protection context,' [and] should be read only to limit the application of the doctrine to situations involving police protection in general." The Court went on to say that the

---

[3] Although this "public duty doctrine" has not been applied in this State to municipalities in actions involving the negligent inspections of homes or negligent issuance of building permits, other jurisdictions have applied this doctrine to actions of a municipality in this capacity. As the Supreme Court of Ohio stated . . . "the primary purpose of building codes and ordinances is 'to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals.' " The Code adopted by the City of Lawrenceville expressly provides that it is to protect the safety, health, and general welfare of its citizens. Accordingly, any negligence in failing to properly inspect property pursuant to the building codes and its negligence in the issuance of the building permit does not create any duty of care to a particular resident. (Citation and punctuation omitted.)

scope of "police protection" is broad enough to include, as the Court of Appeals reasoned in this case, other protective police services. While we do not undertake in this case to set out the exact limits of those services, we take note of the persuasive foreign authority cited by the Court of Appeals in its opinion in this case, applying the public duty doctrine in the context of "hazardous conditions caused by nature" ([*Coffey v. Brooks County*, 231 Ga. App. 886, 887 (1) (500 SE2d 341) (1998)]), and conclude that the scope of police protection for the purposes of the public duty doctrine includes the activities undertaken by Rowe in this case.

*Rowe v. Coffey*, supra, 270 Ga. at 716. The activities that Rowe undertook were to inspect a road during a torrential rainstorm and decide a barricade was unnecessary. Id. at 715.

Gregory argues that, notwithstanding the limitations placed on *City of Rome v. Jordan* by our Supreme Court in these later cases, *City of Lawrenceville v. Macko* remains good law because conducting building inspections are government services provided under governmental police powers for the protection of public welfare. This argument must be rejected as our Supreme Court did in *Hamilton v. Cannon*, supra, 267 Ga. at 656 (see the contrary argument made in Justice Fletcher's dissent, 267 Ga. at 657-659), and the operative language in these Supreme Court decisions is "police protection," not police powers. Therefore, because Division 3 of *City of Lawrenceville v. Macko*, supra, 211 Ga. App. at 316, no matter how well reasoned, is inconsistent with these decisions of our Supreme Court, it must be overruled.

2. The Clives also contend the trial court erred by granting summary judgment to Gregory based on the official immunity doctrine because he was required to inspect the barn and this duty was ministerial rather than discretionary. In Georgia, the doctrine of official immunity provides that a public officer or employee may be personally liable for his negligent ministerial acts, but he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority. *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994). As the Clives' complaint contains no allegation that Gregory's actions were the result of wilfulness, malice, or corruption, the scope of our review is limited to whether he was performing a ministerial or discretionary function.

A discretionary act is one calling for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. On the other hand, a ministerial act is commonly one that is simple, absolute, and definite, arising under

conditions admitted or proved to exist, and requiring merely the execution of a specific duty. *Standard v. Hobbs*, 263 Ga. App. 873, 875 (1) (589 SE2d 634) (2003). "The determination as to whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is made on a case-by-case basis." *Guthrie v. Irons*, 211 Ga. App. 502, 504 (2) (439 SE2d 732) (1993). "Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty. [Cit.]" *Coffey v. Brooks County*, supra, 231 Ga. App. at 889 (2) (b), rev'd on other grounds, *Rowe v. Coffey*, supra, 270 Ga. at 716. Thus, we have held that when a county has established a policy requiring its employee to inspect construction sites and to review plats to ensure compliance with all requirements of the county ordinance, performing such tasks was ministerial. *Happoldt v. Kutscher*, 256 Ga. App. 96, 98-99 (1) (567 SE2d 380) (2002). We reached a similar result in *Leake v. Murphy*, 274 Ga. App. 219, 221-222 (1) (617 SE2d 575) (2005), in which we held that the statutory duty to prepare a plan for a public school is ministerial, not discretionary.

Here, the Clives allege that Gregory's job description required him to inspect buildings, "during and after construction, to ensure components such as footings, floor framing, completed framing, chimneys, stairways, plumbing, electrical, heating, and mechanical meet provisions of building, grading, zoning, and safety laws and approved plans, specifications, and standards"; observe "conditions and enforce[ ] all zoning regulations, County ordinances, and standard building codes; issue[ ] notices for corrections to persons responsible for conformance; obtain[ ] evidence and prepare[ ] reports concerning violations which have not been corrected"; review requests for and issue building permits; explain violations; and ensure that corrections were made to comply with county ordinances and building codes. The Clives contend that the Spalding County Zoning Ordinance adopted the entire Standard Building Code which governed the framing of the barn and the installation of the siding. As they contend that Gregory entirely failed to inspect the barn, this is not a case in which Gregory inspected the barn negligently or that he failed to use sound judgment while inspecting the barn. See *Peele v. Dobbs*, 196 Ga. App. 684 (396 SE2d 600) (1990) (allegation that building inspector inspected chimney, but failed to use sound judgment alleged a violation of a discretionary function).

According to the Clives, Spalding County ordinances required the inspection of all structures for which a building permit was issued, and that Gregory issued building permits for both the house

and the barn. Thus, they contend that Gregory had the ministerial duty to inspect the barn, and, therefore, he is not entitled to assert this defense.

Additionally, the county ordinance states:

the building official upon notification from the permit holder or his agent *shall* make the following inspections and such other inspections as necessary, and *shall* either release that portion of the construction or shall notify the permit holder or his agent of any violations which must be corrected in order to comply with the technical codes:

Building

1. Foundation inspection: To be made after trenches are excavated and forms erected.

2. Frame inspection: To be made after the roof, all framing, fireblocking and bracing is in place, all concealing wiring, all pipes, chimneys, ducts, and vents are complete.

3. Final inspection: To be made after the building is completed and ready for occupancy.

(Emphasis supplied.)

Gregory contends that he was not required to do a final inspection on the barn, because neither the Clives, nor anyone on their behalf, requested a certificate of occupancy on the barn. Because Pratt testified that he, acting on behalf of the Clives, requested a final inspection and certificate of occupancy for the barn, a question of fact exists on whether a request was made. We find, however, that if the evidence establishes that a request was made, Gregory then had the ministerial duty to inspect the barn, and thus would not be entitled to assert the defense of official immunity. *Happoldt v. Kutscher*, supra, 256 Ga. App. at 98-99.

3. Last, Gregory contends that Jeff Clive abandoned his loss of consortium claim by not addressing that issue in his response to Gregory's motion for summary judgment. Our law, however, does not recognize summary judgment by default. *Rapps v. Cooke*, 234 Ga. App. 131 (1) (505 SE2d 566) (1998). Thus, because the trial court must be reversed on Cindy Clive's claims, the grant of summary judgment on her husband's consortium claim must also be reversed. Jeff Clive did not abandon his consortium claim by failing to respond to Gregory's motion for summary judgment on this point.

Therefore, the trial court's grant of summary judgment to Gregory must be reversed and the case remanded for further proceedings.

## Case No. A06A0542

Stringer Lumber's motion for summary judgment asserted that it owed the Clives no legal duty, did not cause the barn to collapse, cannot be held liable because the barn was accepted by Pratt, and the Clives had equal knowledge of the lack of lateral support.

4. In its cross-appeal, Stringer Lumber contends the trial court erred by denying its motion for summary judgment because no evidence shows that the installation of the siding was the likely or proximate cause of the barn's collapse, the Clives had equal knowledge of the improper construction, Stringer did not violate a duty owed the Clives, and the work was accepted by the general contractor.

Evidence shows that Stringer Lumber knew that the barn lacked the necessary lateral support but proceeded to install the siding in violation of recommended manufacturer's installation procedure and the Standard Building Code. Pratt testified in his deposition that Stringer Lumber installed the siding on the barn. He further testified that he had been given a drawing of how the Clives wanted the barn to be built. They had informed him that they wanted it built as economically as possible, and that they would install the horse stalls inside the barn after Pratt completed his work. Pratt claims he did not know that the barn lacked sufficient structural framing when he asked for the final building inspection.

Because the Clives presented the affidavit of a licensed professional engineer who opined that "the improper installation of siding on the Clives' barn, coupled with the lack of required wall bracing, contributed to the collapse of the barn," we find sufficient evidence was presented to create a genuine issue of material fact on the issue of causation. Because more than one proximate cause of an injury can exist, *Eubanks v. Business Equip. &c. of Atlanta*, 161 Ga. App. 202, 203 (288 SE2d 273) (1982), the affidavit of the expert sufficiently connected Stringer Lumber's negligence with that of Pratt's sufficiently to create a jury issue on causation.

The Clives' burden in responding to the motion for summary judgment was only to "point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, supra, 261 Ga. at 491. Given the testimony of their expert, they have met their burden on the causation issue, and the trial court did not err by denying Stringer Lumber's motion on that issue.

Although Stringer Lumber asserts that the expert's affidavit is faulty because it did not state that the improperly installed siding

"was a likely or proximate cause of the barn's collapse," the affidavit plainly states that "the improper installation of the siding on the Clives' barn, coupled with the lack of required wall bracing, contributed to the collapse of the barn." "Moreover, it is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." (Citation and punctuation omitted.) *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 687 (2) (572 SE2d 533) (2002). Here, given the expert's testimony, this is not one of those plain and undisputed cases in which the issue of proximate cause may be resolved as a matter of law.

5. Gregory also contends the Clives cannot recover because Pratt accepted its work. Under the acceptance doctrine, when

> the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, *if the defect is not hidden but readily observable on reasonable inspection.*

(Citations and punctuation omitted; emphasis supplied.) *Peachtree North Apts. Co. v. Huffman-Wolfe Co.*, 126 Ga. App. 594 (191 SE2d 485) (1972). See also *Derryberry v. Robinson*, 154 Ga. App. 694, 695-696 (2) (269 SE2d 525) (1980). Pretermitting whether the acceptance doctrine otherwise would apply in this situation, we find that a question of fact exists on whether the "defect" was "not hidden but readily observable on reasonable inspection."

Whether the improper installation was readily observable by the Clives is closely related to Stringer Lumber's argument that the Clives had equal knowledge of the defect, and we will discuss both concepts together. Stringer Lumber relies upon *Florence v. Knight*, 217 Ga. App. 799 (459 SE2d 436) (1995), and *Soucy v. Alexander*, 172 Ga. App. 501 (323 SE2d 662) (1984), for the proposition that it cannot be held liable because the Clives had equal or superior knowledge of the lack of lateral support in the barn. Those cases are not directly on point with the facts of this case and thus, are not controlling. One significant factual difference present here is that Stringer Lumber's employees examined the barn and discovered that it lacked lateral support. Thus, no question exists that Stringer Lumber had actual knowledge that the barn lacked lateral support and the hazard that posed.

Conversely, no evidence even suggests that the Clives knew the standards for constructing a barn or any other building. Thus, even

though some evidence shows that the Clives visited the barn when the siding was on the outside and the inside wall studs were visible, in the absence of evidence showing that they knew the standards applicable to installing siding we cannot attribute to them knowledge that they understood what they saw.

It is an established rule that " '(o)ne who is familiar with the premises cannot rely for recovery on the negligence of the defendant in failing to correct a patent defect where such party has equal means with the defendant of discovering it or equal knowledge of its existence.' " *Soucy v. Alexander*, supra, 172 Ga. App. at 502. But a question of fact exists on whether the alleged bracing defect was a patent defect or whether, before or after the siding was installed, it was a latent defect. A question of fact also exists on whether the Clives had equal knowledge of the bracing defect or had equal means of discovering it, especially when some evidence shows that a Stringer Lumber employee, in fact, had discovered the bracing defect and had discussed the matter with the general contractor.

It is also an established rule that "a plaintiff may not recover for injuries caused by building construction defects which were discoverable upon reasonable inspection." *Florence v. Knight*, supra, 217 Ga. App. at 800. But Stringer Lumber has not presented any actual evidence showing that the Clives could have discovered the defect, upon reasonable inspection, when they visited the barn after the siding was installed.

For example, there is no evidence that either of the Clives had any knowledge of building construction principles or testimony that the lack of lateral support was patently obvious to a layman. Compare *Wells v. C & S Trust Co.*, 199 Ga. App. 31, 32 (403 SE2d 826) (1991), in which this court held that appellant was charged with knowledge of those defects which he had actually observed or which were so transparently obvious that his failure to observe them cannot reasonably be excused.

Additionally, the issue of a plaintiff's exercise of due diligence for his own safety is ordinarily a question for the jury, although the issue may be summarily adjudicated where the plaintiff's knowledge of the risk is clear and palpable. *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 572 (3) (499 SE2d 722) (1998); *Brown v. Carlisle*, 214 Ga. App. 483, 484 (448 SE2d 256) (1994).

Therefore, Stringer Lumber has not shown that the defect was not hidden so that the acceptance doctrine should apply or that the Clives had superior or equal knowledge of the danger posed by the lack of bracing. Consequently, the trial court did not err by denying Stringer Lumber's motion because it has not shown that this is a clear and palpable case in which summary judgment should be granted. Thus the denial of summary judgment is affirmed.

Judgment affirmed in Case No. A06A0542. Judgment reversed in Case No. A06A0541 and case remanded for further proceedings. Ruffin, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Smith, P. J., Miller, Ellington, Phipps, Mikell, Adams and Bernes, JJ., concur.

DECIDED JULY 13, 2006 —
RECONSIDERATIONS DENIED JULY 31 2006 

Casey, Gilson & Leibel, George P. Shingler, Matthew D. Williams, for Clive et al.

Freeman, Mathis & Gary, T. Bart Gary, Neil L. Wilcove, Stuart W. Gray, Allen W. Bodiford, Ted N. Echols, for Gregory et al. and Aim Land, Inc.