A07A0231. CITY OF TOCCOA et al. v. PITTMAN et al.

(648 SE2d 733)

JOHNSON, Presiding Judge.

Michael Harrison died on April 10, 2004, as a result of injuries sustained during a brawl at a Huddle House Restaurant in Toccoa. The fight began at a nearby billiard room, Straight Shooters, and migrated to Huddle House. Harrison's estate and children sued Huddle House, Inc., and its franchisee (collectively "Huddle House") for negligence, alleging Huddle House failed to keep its premises safe for invitees or warn them of the dangerous conditions. Huddle House in turn filed a third-party complaint against the City of Toccoa and the Toccoa City Commission (collectively "the City"), for negligence in not closing Straight Shooters down before the date of the incident and in maintaining a nuisance by allowing the business to continue operating. The City moved for summary judgment, that the trial court denied. For the reasons that follow, we reverse the trial court's judgment.

The City licensed Straight Shooters as a game room on March 31, 2004, ten days before Harrison's death, but the business had been operating off and on since January 2001. The City had issued an alcohol license to Straight Shooters in 2001, 2002 and 2003, but the 2004 family entertainment license expressly prohibited the sale of alcohol. The City's police department received numerous calls regarding drunkenness and fights at Straight Shooters between August 7, 2003, and April 10, 2004, including times in which the establishment was unlicensed and allegedly closed. There is evidence that the City received reports that alcohol was being served or consumed illegally at Straight Shooters, and that the City took no action to shut down the establishment. There is also evidence that patrons of other nearby nightclubs commonly gathered at the Huddle House when the clubs closed at night.

Harrison went to Straight Shooters on the evening of April 10, 2004. At about 1:00 a.m., a large crowd gathered in the street in front of Straight Shooters. Police officers patrolling the area saw that an argument had broken out, and that people were pushing and shoving one another. No one had been injured. Officers ordered the crowd to disperse, and the participants seemed to comply. When the officers left, the fight resumed inside nearby Huddle House. Harrison was standing outside of the restaurant watching the fight, when the plate glass window broke and a shard of glass struck him in the leg, killing him.

In the wrongful death action filed against Huddle House, Harrison's estate alleged that Huddle House caused the fatal injury by negligently permitting a large and dangerous crowd to form and remain on its premises. In turn, Huddle House filed a third-party

complaint against the City, alleging that the City was negligent in failing to enforce its business and liquor license regulations as to Straight Shooters, and that this failure allowed the unruly and violent crowd to form at Huddle House. Huddle House also alleged that the City was liable for maintaining a nuisance — namely Straight Shooters.

The City answered and moved for summary judgment, arguing that Huddle House could not prevail on the negligence claim because it failed to show that the City owed a specific duty of care to Harrison, that any act or omission by the City proximately caused Harrison's death, or that the City maintained a nuisance. The trial court denied the motion for summary judgment, holding that the City had not shown it had no duty toward Harrison, that there was a factual question as to whether any act or omission of the City was the proximate cause of Harrison's death, and that a fact issue remained on the nuisance claim since there was evidence that the City controlled Straight Shooters and engaged in continuous acts or omissions that proximately caused Harrison's injury.

1. The City contends that under the "public duty" doctrine, it cannot be held liable because the duty owed by the governmental unit runs to the public in general, and there is no special relationship between the City and Harrison giving rise to a particular duty owed to him. The City urges that the trial court erred in holding that the public duty doctrine does not apply in this case. We agree with the City.

Under the public duty doctrine, liability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, except where there is a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual.[1] A special relationship exists where: (1) the municipality made an explicit assurance, through promises or actions, that it would act on behalf of the injured party; (2) the municipality had knowledge that inaction would lead to harm; and (3) the injured party justifiably and detrimentally relied on the municipality's explicit assurances.[2]

In its third-party complaint, Huddle House alleged that the City had the authority to register and license businesses through its "police power"; that the Commission is responsible for licensing, regulation and restraint of billiard rooms; that the Commission is empowered to impose penalties for the failure to comply with its ordinances; that the City employs a police department; that the

---

[1] *Clive v. Gregory,* 280 Ga. App. 836, 839 (1) (635 SE2d 188) (2006).

[2] *City of Rome v. Jordan,* 263 Ga. 26, 29 (2) (426 SE2d 861) (1993).

Commission limits the sale of alcohol to those having alcohol licenses; that a city ordinance prohibits family recreation centers from selling alcohol or remaining open after midnight on weekends; that police were called to Straight Shooters numerous times to investigate complaints of alcohol sales, drunkenness and fighting, but that police took little or no action; that the City allowed Straight Shooters to operate without a license for months; that the police department knew about problems at Straight Shooters and that the problems often migrated to Huddle House; that the City permitted the alcohol and closing time violations to persist; and that neither the City nor the police department issued any citations to Straight Shooters from August 2003 to March 31, 2004. Huddle House alleged the City had a duty to ensure that the business complied with city ordinances, and that it breached that duty by repeatedly failing to take action against Straight Shooters. Huddle House alleged that had the City taken appropriate action against Straight Shooters, the business would not have been operating on the night of the brawl, and Harrison would not have been killed.

Pretermitting the issue of proximate cause (namely, whether Huddle House would be able to prove that the City's alleged failure to enforce its licensing requirements as to one business was the proximate cause of Harrison's injury resulting from a criminal act committed at another business),[3] we hold that Huddle House has failed to show the City had a duty to protect Harrison from the activity which resulted in his injury.

The duty owed by the City to enforce its ordinances as to any unlawful activity at Straight Shooters runs to the public in general and not to any particular member of the public, unless there is a special relationship between the City and Harrison giving rise to a particular duty owed to Harrison.[4] Inasmuch as Huddle House has produced no evidence of such a special relationship, the public duty doctrine applies and bars the third-party negligence complaint.[5]

Huddle House claims, however, that the public duty doctrine does not apply here because the doctrine only applies in the police

---

[3] Although the trial court found a genuine issue of material fact as to proximate cause, we do not address the issue on appeal because it was not raised by the City in its enumerations of error. We point out, however, that before any negligence can be actionable, that negligence must be the proximate cause of the injuries sued upon; to establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. *Grinold v. Farist*, 284 Ga. App. 120, 121 (1) (643 SE2d 253) (2007).

[4] See generally *Clive*, supra.

[5] See *Washington v. Jefferson County*, 221 Ga. App. 81, 82 (470 SE2d 714) (1996).

protection context, not in a case such as this one, which involves the government's administrative actions.[6]

The evidence shows that enforcement of the ordinances at issue here necessarily requires law enforcement action. The City points to undisputed evidence that the Toccoa Police Department enforces compliance with business licenses and municipal ordinances. It is clear from Huddle House's complaint that its contention has been that the police were repeatedly called to Straight Shooters in response to complaints about drinking, fighting, and crowds on the premises after the pool hall should have been closed and when it was prohibited from selling alcohol, that the police should have responded differently, that the City should have shut the establishment down, and that its failure to do so resulted in Harrison's being the victim of a violent crime. This is essentially a police protection case. No special relationship or particular duty being shown here, the claim fails.[7] The City was entitled to summary judgment on the negligence claim.

2. The City contends the trial court erred when it held that a jury question existed on the nuisance claim. Again, we agree with the City.

To be liable for creating or maintaining a nuisance, a municipality must be chargeable with the following: the defect or degree of misfeasance exceeds mere negligence; the act complained of is of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and there is a failure of municipal action within a reasonable time after knowledge of the defect or dangerous condition.[8] A one-time occurrence does not amount to a nuisance.[9] For instance, the sole act of approving a project which leads to an injury cannot impose liability on a municipality for creating or maintaining a nuisance.[10]

An essential issue in a nuisance case is whether the defendant's actions constituted such exercise of control or acceptance so as to establish a duty on the part of the defendant to adequately maintain the cause of the nuisance.[11] The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance.[12]

---

[6] See *Clive*, supra.

[7] Id.

[8] *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996); see *Goode v. City of Atlanta*, 274 Ga. App. 233, 235 (2) (617 SE2d 210) (2005).

[9] *Banks v. Mayor &c. of Savannah*, 210 Ga. App. 62 (1) (435 SE2d 68) (1993).

[10] *Hibbs*, supra.

[11] See id.; *City of Columbus v. Barngrover*, 250 Ga. App. 589, 592 (1) (a) (552 SE2d 536) (2001); see *Fielder v. Rice Constr. Co.*, 239 Ga. App. 362, 366 (1) (522 SE2d 13) (1999) (physical precedent only).

[12] *C & S Trust Co. v. Phillips Petroleum Co.*, 192 Ga. App. 499, 500 (3) (385 SE2d 426) (1989).

Huddle House alleges in its complaint that the City maintained a nuisance in that it knew its ordinances were being violated at Straight Shooters, but it took no action to enforce them. There is no evidence that the City performed a continuous or regularly repetitious act or created a continuous or regularly repetitious condition which caused Harrison's injury, and that it failed to rectify a dangerous condition in violation of a duty to act.[13] There is no evidence that Straight Shooters was regularly being *used* for criminal activity of the kind that caused Harrison's death,[14] or that any serious injuries or deaths had previously occurred at Straight Shooters (or at Huddle House after the pool hall crowd migrated to the restaurant). And, as discussed in Division 1, Huddle House has not shown the City owed any particular duty toward Harrison.

Here, the alleged nuisance was the continued operation of Straight Shooters, a privately owned and operated billiard room. While the evidence may support a nuisance claim against the owners of Straight Shooters, the record is devoid of any evidence that the City created, continued, or maintained the alleged nuisance or controlled the actions of Straight Shooters or its patrons.[15] The City exercised no control over Straight Shooters, and was not charged with maintaining the private business.[16]

Although the question of whether a nuisance exists is normally one of fact, in some cases it can be decided as a matter of law.[17] Huddle House has cited no cases holding a city liable for nuisance for injuries resulting from the criminal acts of third parties committed on or near the premises of a private business. Given the record before us, the City was entitled to judgment as a matter of law on the nuisance claim.

*Judgment reversed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 29, 2007 — ▮▮▮▮▮▮▮

*McClure, Ramsay, Dickerson & Escoe, John A. Dickerson, Larry L. Hicks II*, for appellants.

---

[13] See *City of Atlanta v. Broadnax*, 285 Ga. App. 430 (646 SE2d 279) (2007).

[14] See *Hibbs*, supra.

[15] See generally *Grinold*, supra at 122-123 (2).

[16] See generally *Reidling v. City of Gainesville*, 280 Ga. App. 698, 704 (2) (634 SE2d 862) (2006) (county not liable in nuisance where city owned and maintained property); *Stanfield v. Glynn County*, 280 Ga. 785, 786 (1) (631 SE2d 374) (2006) (county not liable for nuisance where it neither owned nor was charged with maintaining waste facility, even though it approved construction and issued building permits).

[17] *Goode*, supra at 235-236 (2).

■■■■■■■■■■■■

*Omar R. Mark Zamora, Barrickman, Allred & Young, William B. Barrickman, Elizabeth G. Howard, Sean A. Black, Runyan & Green, Andrea J. Runyan,* for appellees.