A01A2201, A01A2202, A01A2228, A01A2229, A01A2230, A01A2464,
A01A2465, A01A2466, A01A2467, A01A2475. GAMBLE et al.
v. WARE COUNTY BOARD OF EDUCATION et al. (ten cases).
A01A2468. GAMBLE v. WARE COUNTY BOARD OF EDUCATION
et al.
(561 SE2d 837)

RUFFIN, Judge.

Proceeding pro se, George Gamble presented to the Ware County Superior Court clerk 11 lawsuits naming the Ware County Board of Education and various school officials and employees as defendants.[1] Gamble included a pauper's affidavit with each complaint stating that he could not pay the court filing fees. Pursuant to OCGA § 9-15-2 (d), the court clerk submitted the complaints to the trial court for review before filing them. Concluding that the complaints contained no justiciable issue of law or fact, the trial court refused to permit their filing. Gamble now appeals. Although not all of these appeals are factually related, the same legal principles generally govern their disposition. Accordingly, we have consolidated them for appeal, and for reasons that follow, we affirm in part and reverse in part.

Under OCGA § 9-15-2 (d),

[w]hen a civil action is instituted by an indigent party who is not represented by an attorney the trial judge is required to review the pleading and, if the judge determines that the pleading shows on its face such a complete absence of any justiciable issue of law or fact that it cannot be reasonably believed that the court could grant any relief against any party named in the pleading, then the judge shall enter an order denying filing of the pleading.[2]

In conducting this review, the trial court must determine whether the facts alleged in the complaint state a claim for relief under which the plaintiff may recover.[3] The court can deny filing "[o]nly if the pleading is completely devoid of any justiciable issue of law or fact."[4] A complaint is sufficient if it places the defendant on notice of the claim against him, and on appeal, we must construe Gamble's complaints favorably to him.[5] Furthermore, we will not

---

[1] At least one other member of Gamble's family also signed the complaints in four of the eleven cases.

[2] (Punctuation omitted.) *Mosier v. State Bd. of Pardons &c.*, 213 Ga. App. 545 (2) (445 SE2d 535) (1994).

[3] See *Gamble v. Diamond "D" Auto Sales*, 221 Ga. App. 688 (1) (472 SE2d 446) (1996).

[4] Id.

[5] See id.

hold his pro se complaints to the "[strict] standards of formal pleading."[6]

Applying these principles, we find no error in the trial court's order prohibiting Gamble from filing the complaints in Case Nos. A01A2201, A01A2228, A01A2229, A01A2464, A01A2465, A01A2466, A01A2468, and A01A2475. The trial court, however, should have permitted Gamble to file the complaints involved in Case Nos. A01A2202, A01A2230, and A01A2467.

1. As an initial matter, the defendants named in Gamble's complaints have filed a motion to dismiss these appeals or, in the alternative, have requested that we order Gamble to serve his appellate briefs on them. They argue that because Gamble failed to serve them with the complaints or any other pleadings, we should not consider his appeals. We disagree.

Because the trial court did not permit Gamble to file his complaints, suit has not begun, and these named defendants are not yet parties. The complaints were not filed, the clerk never issued summons, and process was not served.[7] In short, the trial court halted the lawsuits before they started, and nothing obligated Gamble to serve the complaints on the defendants. Similarly, Gamble was not required to serve his notice of appeal on the defendants, who were never parties below and thus are not parties on appeal.[8] Also, we cannot find that Gamble violated the rules of this Court by failing to serve his appellate briefs on these nonparties.[9] Although the better practice in this type of appeal would be to serve the named defendants, the failure to do so does not warrant dismissal. The defendants' motion, therefore, is denied.

### Case Nos. A01A2201, A01A2202, A01A2228, A01A2229, and A01A2230

These five appeals arise out of a November 12, 1999 school bus incident involving Gamble's son. As alleged in the complaints and attached documents, on that date, bus monitor Essie Mae Hands prepared a conduct form stating that K. G., Gamble's son, engaged in

---

[6] Id.

[7] See OCGA §§ 9-15-2 (d); 9-11-4 (a) ("*Upon the filing of the complaint,* the clerk shall forthwith issue a summons and deliver it for service.") (emphasis supplied); 9-11-4 (e) ("Except for cases in which the defendant has waived service, the summons and complaint shall be served together.").

[8] See OCGA § 5-6-37 ("All parties to the proceedings in the lower court shall be parties on appeal and shall be served with a copy of the notice of appeal.").

[9] See Court of Appeals Rule 1 (a) ("All filings, documents, motions, briefs, requests and communications relating to appeals . . . shall show that copies have been furnished to *opposing counsel.*") (emphasis supplied). We note that, according to Gamble, he served each of the briefs on the Board of Education by hand delivery.

sexual misconduct on the bus. The conduct form was signed by bus driver Quincy Daniels, Transportation Director M. O. Beverly, and Assistant Principal Ken Williams.

K. G. was suspended from riding the bus from November 16, 1999, through November 18, 1999. Apparently, however, he was ill for the first two days and did not learn of the suspension until November 18, 1999, when he attempted to ride the bus and received a copy of the conduct form. Gamble immediately contacted the school to arrange a conference, and a meeting between Assistant Principal Williams, bus driver Daniels, bus monitor Hands, Gamble, and K. G. took place on November 22, 1999. At that meeting, Gamble questioned the bus employees about the incident. Ten days later, Gamble submitted to Williams an affidavit executed by K. G. denying the misconduct. The following November, Gamble requested that Superintendent Richard Brantley delete the reference to sexual misconduct from K. G.'s school record. Brantley refused, but school officials permitted Gamble to place a "rebuttal statement" relating to the incident in K. G.'s record.

2. *Case Nos. A01A2201, A01A2228, and A01A2229.* In three complaints, Gamble alleges that, with respect to the November 12, 1999 incident, the Board of Education, Superintendent Brantley, Assistant Principal Williams, and Ware County Transportation Director Beverly violated K. G.'s due process rights and engaged in tortious conduct that injured his family. We agree with the trial court that these complaints present no justiciable issue of fact or law.

(a) Gamble contends that he and K. G. did not receive adequate notice of the bus suspension, that school officials failed to immediately inform him about the alleged misconduct, and that the delay hindered any investigation into the incident. Citing the delays and inaction, Gamble asserts that the defendants violated his son's due process rights under the United States Supreme Court's decision in *Goss v. Lopez.*[10] The *Goss* Court determined that

> [s]tudents facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.[11]

[10] 419 U. S. 565 (95 SC 729, 42 LE2d 725) (1975).
[11] Id. at 581 (III).

As we have noted, *Goss* "sets forth the principles relative to a student's constitutional rights" in cases involving school suspensions.[12]

Gamble's complaints involve a school bus suspension, rather than a suspension from school, and we question whether a student has a constitutionally protected interest in riding the school bus.[13] We need not resolve this issue, however, because Gamble does not contend that the defendants violated due process or injured K. G. by temporarily banning him from the bus. Instead, his due process allegations involve the alleged damage to K. G.'s reputation and honor caused by the sexual misconduct report placed in his school record.[14] Thus, we must consider whether school officials afforded K. G. a sufficient opportunity under *Goss* to challenge that misconduct report.

Gamble asserts that various school officials failed to provide K. G. and his family sufficient notice of the misconduct charge. According to Gamble, he and his son first learned about the charge when K. G. tried to ride the bus on November 18, 1999, seven days after the incident and during the suspension period. Gamble apparently contends that due process required the school to notify K. G. of the misconduct charge and hold a hearing before the suspension commenced.

Generally, "notice and hearing should precede removal of the student from school."[15] Even if this general rule applies to bus suspensions, however, it does not permit recovery here because Gamble does not complain about his son's inability to ride the bus for three days. His concerns involve the sexual misconduct report placed in K. G.'s school file.

Furthermore, assuming — without deciding — that notice of the suspension was late, school officials cured this deficiency by subsequently giving Gamble and K. G. an adequate opportunity to challenge and question the sexual misconduct allegations in K. G.'s file.[16] Gamble's complaints show that he and K. G. received written notice of the charges seven days after the incident, met with and questioned the individuals who witnessed and reported the alleged misconduct, presented K. G.'s side of the story to authorities, and placed a rebut-

---

[12] *Dillard v. Fussell*, 160 Ga. App. 382 (287 SE2d 96) (1981); see also *Wayne County Bd. of Ed. v. Tyre*, 199 Ga. App. 384, 386 (1) (404 SE2d 809) (1991).

[13] See *Rose v. Nashua Bd. of Ed.*, 679 F2d 279, 281-282 (1st Cir. 1982).

[14] See *Goss*, supra at 574 (II) ("The Due Process Clause also forbids arbitrary deprivations of liberty. 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied.").

[15] Id. at 582 (III).

[16] See *Atlanta City School Dist. v. Dowling*, 266 Ga. 217, 218 (466 SE2d 588) (1996) (" '[T]he state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation . . . arise.' ").

tal statement outlining K. G.'s version in his permanent student record. The complaints thus establish that K. G. received the minimum procedural protections required by *Goss*.[17]

In his complaints, Gamble asserts that the delay in notification prevented him from gathering evidence — such as a bus videotape that was erased — to support K. G.'s explanation of the incident. Under *Goss*, however, due process guarantees a suspended student only oral or written notice of the charges, an explanation of the evidence against him, and an opportunity to present his side of the story.[18] A school is not required to "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident."[19] Clearly, the school need not formally gather, preserve, and present evidence.[20] Accordingly, the alleged delay in notification did not deny K. G. due process, and the trial court properly prohibited Gamble from proceeding with his due process claims against the school board, Superintendent Brantley, Assistant Principal Williams, and Transportation Director Beverly.

(b) Gamble also alleges that these defendants' decision to discipline K. G. was, among other things, unlawful, malicious, negligent, fraudulent, libelous, and constituted intentional infliction of emotional distress. As discussed below, these tort claims cannot withstand review under OCGA § 9-15-2 (d) because immunity protects each defendant from suit.

Gamble alleges that the school board is "vicariously liable" for the actions of its employees, such as bus driver Daniels and bus monitor Hands, who, according to Gamble, are "social enemies" of his family and fabricated the sexual misconduct charges against K. G. The Ware County Board of Education, however, falls within the "1991 constitutional amendment extending sovereign immunity to the state and all of its departments and agencies."[21] Sovereign immunity can be waived only through legislation *specifically providing* "that [the] immunity is thereby waived and the extent of [the] waiver."[22] We have not found — and Gamble has not cited — any legislation specifically waiving the school board's immunity from liability in this type of case, which involves allegations that school employees tortiously and unlawfully disciplined a student.[23] And the State's

---

[17] See *Tyre*, supra at 386.

[18] See *Goss*, supra at 581.

[19] Id. at 583 (III).

[20] See id.

[21] *Hunt v. City of Atlanta*, 245 Ga. App. 229, 230 (537 SE2d 110) (2000).

[22] *Crisp County School System v. Brown*, 226 Ga. App. 800 (1) (487 SE2d 512) (1997).

[23] See id. at 800-801; see also OCGA § 20-2-992 (local board of education does not waive immunity by obtaining liability insurance for school officials and employees under OCGA § 20-2-991).

limited waiver of sovereign immunity for the torts of state officers and employees under OCGA § 50-21-23 (a) does not apply to school districts or other "local authorities."[24] The trial court, therefore, properly refused to file Gamble's tort claims against the Ware County Board of Education.[25]

Gamble's complaints also present no justiciable tort issue regarding Superintendent Brantley, Assistant Principal Williams, and Transportation Director Beverly. The doctrine of official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption."[26] A discretionary act requires personal deliberation and judgment, which " 'entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.' "[27] We have previously found that supervising and disciplining school children constitute discretionary acts.[28] Furthermore, under OCGA § 20-2-1000 (b), "[n]o educator shall be liable for any civil damages for, or arising out of, any act or omission concerning, relating to, or resulting from the discipline of any student or the reporting of any student for misconduct, except for acts or omissions of willful or wanton misconduct."

Gamble's tort allegations against Brantley, Williams, and Beverly revolve around their participation in the disciplinary action against K. G. Based on the official immunity doctrine and OCGA § 20-2-1000 (b), we find that those allegations cannot survive OCGA § 9-15-2 (d). Gamble complains that these individuals signed bus conduct forms, did not timely notify him about the suspension, refused to overturn the charges, and upheld the findings of their subordinates. None of these alleged facts shows malicious, wilful, or wanton conduct.[29] Gamble's claims against Brantley, Williams, and Beverly, therefore, are barred.[30]

---

[24] See *Crisp County*, supra at 801; OCGA § 50-21-22 (5).

[25] See *Mosier*, supra at 547-548 (trial court properly refused to allow prisoner to file complaint against parole board, which was protected from suit by sovereign immunity).

[26] *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995).

[27] Id.

[28] See *Holbrook v. Exec. Conference Center*, 219 Ga. App. 104, 106 (1) (464 SE2d 398) (1995); *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 297 (454 SE2d 149) (1995); see also *Dillard*, supra at 383 (principal, school superintendent, and members of school board were immune from allegations that student was wrongfully suspended).

[29] See *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999) ("[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful act."); *Muller v. English*, 221 Ga. App. 672, 676 (2) (c) (472 SE2d 448) (1996) (" 'Wilful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent.' ").

[30] See *Dillard*, supra at 383 (principal's hurried and erroneous decision to suspend student did not give rise to a cause of action).

3. *Case Nos. A01A2202 and A01A2230.* The trial court, however, erred in refusing to file the complaints in Case Nos. A01A2202 and A01A2230. In addition to naming the school board and Superintendent Brantley as defendants, these two cases assert a litany of tort claims against bus driver Daniels and bus monitor Hands, including intentional infliction of emotional distress, libel, and negligence. As discussed above, Gamble's allegations against the school board and Brantley present no justiciable issue.[31] Construed favorably to Gamble, however, the tort allegations against Daniels and Hands state a claim for relief under which Gamble may, theoretically, be able to recover.[32]

In Case No. A01A2230, Gamble asserts that Hands fabricated the sexual misconduct charges against K. G. because, as a "social enemy" of Gamble's family, she sought to damage and injure K. G.'s "honor, integrity, reputation, and character." Gamble similarly alleges in Case No. A01A2202 that Daniels, Hands' brother-in-law and another "social enemy" of the Gambles, colluded with Hands "to provide misleading false facts" relating to the incident. If, as Gamble claims, Daniels and Hands intentionally made up the misconduct charges to injure K. G.'s reputation and character as part of an ongoing feud, recovery might be available.[33] Furthermore, given Gamble's specific allegations of intentional and arguably malicious conduct by Daniels and Hands, we cannot conclude from the pleadings that these complaints would be barred by official immunity or OCGA § 20-2-1000 (b).

Although we express no view as to the merits of Gamble's allegations, we find that his actions against Daniels and Hands present a justiciable issue of law or fact.[34] Accordingly, the trial court's order prohibiting Gamble from filing the complaints in Case Nos. A01A2202 and A01A2230 must be reversed.

---

[31] For the reasons discussed in Division 2 (a), the procedural due process allegations in Case Nos. A01A2202 and A01A2230 also lack merit.

[32] See *Gamble*, supra.

[33] See, e.g., *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616 (1) (a) (554 SE2d 783) (2001) (to sustain a claim for intentional infliction of emotional distress, plaintiff must prove that (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe); *Gillis v. American Gen. Life &c. Ins. Co.*, 222 Ga. App. 891, 892 (476 SE2d 648) (1996) ("A complaint is not required to set forth a cause of action, but need only set forth a claim for relief. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.") (punctuation omitted).

[34] See *Evans v. City of Atlanta*, 189 Ga. App. 566, 567 (377 SE2d 31) (1988); see also *Battle v. Seago*, 208 Ga. App. 516, 517 (431 SE2d 148) (1993) ("While plaintiff's allegations are somewhat bizarre, we cannot assume that they did not occur.").

### Case Nos. A01A2464, A01A2465, A01A2466, A01A2467, and A01A2475

These five cases involve a separate allegation of school bus misconduct by K. G. According to the complaints and attached documents, on September 21, 2000, bus driver Jackie Dickson prepared a conduct form stating that K. G. was "acting up on the bus[,] was doing ugly things with his body[,] and was sexual[ly] harassing a young girl on the bus." Dickson, Assistant Principal Williams, and Transportation Director Beverly signed the conduct form, which indicated that K. G. would be suspended from the bus for ten days, beginning on September 25, 2000. A school official brought the conduct form to Gamble's home on September 25.

Four days later, Gamble met with school officials, who raised concerns about the sexual harassment allegation and arranged a subsequent meeting with Dickson. Gamble, K. G., Dickson, Principal Yonz, Williams, and Beverly attended that meeting. Gamble questioned Dickson about the incident, and Yonz determined that K. G. had not sexually harassed a female student. At that point, Yonz amended the conduct form to state that K. G. had "made a sexual gesture towards [a] girl [but] did not touch [the] girl." He also deleted the reference to sexual harassment.

Protesting that K. G. had not made a "sexual gesture" on the bus, Gamble met with Superintendent Brantley and asked that the conduct form be removed from K. G.'s record. Brantley refused, and Gamble prepared complaints naming the Board of Education, Brantley, Yonz, Williams, Beverly, and Dickson as defendants.

4. *Case Nos. A01A2464, A01A2465, A01A2466, and A01A2475.* In the complaints in these four cases, Gamble contends that the school board, Brantley, Yonz, Williams, and Beverly deprived K. G. of due process and committed various torts against his family. We agree with the trial court that these complaints do not present a justiciable issue of law or fact.

(a) As in the complaints discussed in Division 2, Gamble alleges that each defendant denied K. G. due process. Once again, the due process arguments focus not on K. G.'s temporary loss of bus privileges, but on the sexual misconduct charges in his school record, which, Gamble asserts, impair K. G.'s "honor, reputation, dignity, integrity, and un-corruptibility."[35]

Gamble's complaints show that the school gave Gamble and K. G. the chance to discuss the incident with school officials, question the bus driver who witnessed and reported the misconduct, and offer

---

[35] In fact, it appears from the complaints that K. G. continued to ride the bus during the ten-day suspension period.

K. G.'s version of the facts. Those meetings resulted in removal of the sexual harassment language from the bus conduct form. We find that school officials afforded Gamble and K. G. the notice and opportunity to be heard required by *Goss*.[36]

Gamble contends that K. G. should have been notified immediately about the misconduct charge and that school officials tried to "sneak" the conduct form into K. G.'s school file without informing K. G. or his family about the charge. The complaints show, however, that Gamble received a copy of the bus conduct form four days after the incident, on the day the suspension began. And even if Gamble and K. G. should have been notified earlier, any deficiency in the notice was cured by the opportunities school officials gave Gamble and K. G. to question and challenge the misconduct allegations.[37] The defendants thus complied with due process.

(b) Gamble also alleges that these defendants committed various torts against his family, including intentional infliction of emotional distress, negligence, and libel. He contends that the school board, Brantley, Yonz, Williams, and Beverly unlawfully failed to expunge the misconduct charge from K. G.'s record, neglected to promptly notify K. G. and his parents about the misconduct, and altered the bus conduct form to reference a "sexual gesture," even though K. G. denied making the gesture. In addition, Gamble asserts that the school board, Brantley, and Yonz are vicariously liable for the torts of their employees.

Again, we agree with the trial court that these allegations do not set forth a justiciable issue. As discussed in Division 2 (b), the Board of Education enjoys sovereign immunity, barring Gamble's claims against it. Furthermore, even if school authorities should have notified K. G. and his parents sooner about the misconduct allegations, but failed to do so, these facts do not show the type of wilful or malicious conduct needed to avoid the official immunity doctrine and OCGA § 20-2-1000 (b).[38] Similarly, the fact that school authorities refused to completely reject Dickson's misconduct report does not evidence malice or wilfulness. In fact, the complaints reveal that authorities *reduced* the original charge from sexual harassment to making a sexual gesture, indicating a lack of malice.

Gamble vaguely alleges that the defendants engaged in a "cover-up" by "slipping" this misconduct charge into K. G.'s record to substantiate the November 12, 1999 misconduct allegation. Other factual allegations in Gamble's complaints, however, undermine this "cover-up" charge. According to the complaints, just four days after

---

[36] Supra at 581.
[37] See *Dowling*, supra.
[38] See *Adams*, supra.

the September 21, 2000 incident, a school official brought the bus conduct form to Gamble's home. Shortly thereafter, Gamble and K. G. met with various school officials and the bus driver, and school officials concluded that K. G. had not sexually harassed a female student, as originally reported. The complaints themselves establish that no malicious "cover-up" took place. The trial court, therefore, properly refused to file the complaints in Case Nos. A01A2464, A01A2465, A01A2466, and A01A2475.

5. *Case No. A01A2467.* The trial court erred, however, in not allowing Gamble to file his complaint in Case No. A01A2467. In that complaint, Gamble alleges that the Board of Education, Superintendent Brantley, and bus driver Dickson violated K. G.'s due process rights and committed various torts against his family. As found in Division 4, the claims against the school board and Brantley — as well as the procedural due process claims — cannot survive review under OCGA § 9-15-2 (d). Nevertheless, Gamble's tort allegations against Dickson are sufficient to permit filing.

Gamble contends that Dickson conspired with Daniels and Hands to fabricate the September 21, 2000 misconduct charge in order to "substantiate the [November 12, 1999] incident." Like Gamble's claims against Daniels and Hands, this conspiracy allegation, if true, could lead to recovery. And while Gamble's conspiracy theory seems far-fetched, we cannot assume that it did not occur.[39] Accordingly, the trial court erred in refusing to file Gamble's claim against Dickson.

## Case No. A01A2468

6. Gamble's eleventh complaint does not involve K. G. or misconduct on a school bus. Instead, he alleges that the Ware County Board of Education, Superintendent Brantley, and Assistant Superintendent Vince Richardson discriminated against him when they refused to hire him as a substitute teacher. According to the complaint, the defendants rejected Gamble for employment after they learned that Gamble had been charged with a criminal drug violation, for which he apparently received first offender treatment.[40] We agree with the trial court that this complaint contains no justiciable question of law or fact.

Gamble broadly asserts that, in refusing to hire him as a substitute teacher, the defendants discriminated against him, violated his due process and equal protection rights, and engaged in wilful, conspiratorial, and malicious conduct. Without some specific allegations

---

[39] See *Battle*, supra at 517.
[40] See OCGA § 42-8-62 (a).

regarding how the defendants' conduct violated the law, however, "bald assertions of impropriety" cannot withstand review under OCGA § 9-15-2 (d).[41] Facts showing unlawful conduct must be asserted.[42]

In his complaint, Gamble makes no effort to allege how the defendants' conduct violated the law. The complaint states only that he applied for the substitute teaching position, submitted information about his criminal history to the defendants, learned that an administrative review committee had discussed his criminal history and rejected his application, and filed a charge of discrimination with the Equal Employment Opportunity Commission, which was denied.

These "facts" neither allege any illegal conduct nor "serve to put the defendants on notice of the existence of a claim against them."[43] At base, Gamble claims that the defendants rejected his application when they grew concerned about his criminal history. We cannot find that the defendants acted unlawfully or improperly by rejecting his application on this ground; a school board may refuse "to employ as a substitute teacher one who, in the discretion of the board, would be detrimental to the education of the students."[44] Furthermore, Gamble's vague claim that the school board's hiring procedure denied him due process is insufficient. His complaint does not explain how his due process rights were violated, and he has not asserted how the school board's hiring decision possibly affected his liberty or property interests.[45] Similarly, his general allegations that the defendants discriminated against him and treated him maliciously have no factual support. Accordingly, the trial court properly refused to file the complaint in Case No. A01A2468.[46]

*Judgment affirmed in Case Nos. A01A2201, A01A2228, A01A2229, A01A2464, A01A2465, A01A2466, A01A2468, and A01A2475. Judgment reversed in Case Nos. A01A2202, A01A2230, and A01A2467. Johnson, P. J., and Ellington, J., concur.*

---

[41] *Williams v. Skandalakis*, 265 Ga. 693 (461 SE2d 226) (1995).

[42] See id.

[43] Id. at 693-694.

[44] OCGA § 20-2-216.

[45] See Ga. Const. of 1983, Art. I, Sec. I, Par. I ("No person shall be deprived of life, liberty, or property except by due process of law."); *Goldrush II v. City of Marietta*, 267 Ga. 683, 695 (8) (482 SE2d 347) (1997) ("[T]o have a property interest, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (punctuation omitted); see also *DeClue v. City of Clayton*, 246 Ga. App. 487, 489 (1) (540 SE2d 675) (2000) ("Under Georgia law, generally, one in public employment has no vested right to such employment."); *Johnson v. New York City Police Dept.*, 2001 U. S. App. LEXIS 26167 at *2 (2nd Cir. 2001) (plaintiff "cannot claim a property interest in a prospective job. As an applicant, he has only an 'unprotected unilateral expectation' of employment").

[46] See *Williams*, supra; *Cargill v. Zant*, 207 Ga. App. 393, 394 (427 SE2d 809) (1993).

DECIDED FEBRUARY 19, 2002.

George K. Gamble, Jr. et al., *pro se.*
*Harben & Hartley, Sam S. Harben, Jr.,* for appellees.