A08A1754. RUSSELL v. BARRETT et al.

(673 SE2d 623)

MIKELL, Judge.

Tekemah Russell, individually and as the administrator of the estate of her son Detrick Corbett, Jr., filed an action against Jacquelyn Barrett, in her capacity as Sheriff of Fulton County, the Fulton County Sheriff's Department (the "Department"), and Vivian Dixon Bradford, individually and as the Deputy Sheriff of Fulton County, alleging claims of negligence, failure to train, instruct, and supervise, assault and battery, and respondeat superior. Russell also alleged that the defendants violated the decedent's civil rights under 42 USC § 1983. The defendants filed a motion for summary judgment as to each of Russell's claims, which the trial court granted without specifying the reasons therefor. On appeal, Russell challenges the trial court's ruling. We affirm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).[1]

Properly viewed, the record shows that at approximately 1:30 a.m. on May 22, 2002, Deputy Sheriff Vivian Dixon Bradford, Deputy Donnie Lee McBee, Deputy Kirby Early, and Sergeant Reginald Poplus of the Fulton County Sheriff's Department's Fugitive Unit were en route to search for an escapee from the Fulton County jail when they approached the scene of an automobile accident. McBee and Poplus were following Bradford and Early in Early's vehicle. Poplus, who was in charge, indicated that the officers should check out the accident. Bradford and McBee exited their vehicles, and Early and Poplus parked.

Bradford testified that she saw a woman lying in the street and a man sitting behind the steering wheel of a vehicle parked in the street. Bradford recalled that just before they stopped, the man ran around the rear of the car and removed a baby from the car. Bradford exited her vehicle and approached the man, identifying herself as a deputy of the sheriff's office. Bradford testified that the man started walking away from the accident, and when she asked him to talk to her, he ran up the street carrying the baby.

Bradford pursued the man, later identified as Detrick Corbett,

---

[1] (Citation omitted; emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Sr., the father of the decedent, who ran on the sidewalk for about half a block then up a driveway to a salvage yard. Bradford testified that because the area was dark and the driveway even darker, she could not see the suspect so she drew her weapon. Bradford recalled that fellow officer McBee was running toward her on the sidewalk at the time but was not close to her yet. Bradford saw Corbett holding the baby as he walked down the driveway toward her so she tried to reholster her gun. Corbett suddenly lunged at her, and they fought for the gun. Bradford recalled that she yelled at McBee that the suspect had her gun. Bradford continued to struggle with Corbett; they both went down and the gun discharged. The bullet hit the baby, and he was killed instantly.

Bradford testified that she had heard nothing about Corbett or the accident over her radio when they stopped at the accident scene. Bradford could not say who pulled the trigger. According to Bradford, Corbett pleaded guilty to felony obstruction of a police officer and aggravated assault of a police officer in connection with the incident.

Deputy McBee testified that once Bradford began to chase Corbett, McBee followed her to provide backup. McBee further testified that he saw Corbett as he walked down the driveway toward Bradford and that he did not think that Corbett had a weapon. For that reason, McBee did not draw his weapon. McBee saw Corbett lunge at Bradford and witnessed the ensuing struggle between them. When he heard the gunshot, McBee was about three to four feet away from them. McBee saw that the baby had been shot.

On cross-examination, McBee acknowledged that Corbett committed no crime when he ran away from Bradford. However, he testified that an officer might conclude that Corbett's actions constituted misdemeanor obstruction, although in McBee's opinion, such a charge would have been "shady" under the circumstances. McBee also testified that he did not recall telling Poplus who shot the child. Poplus, however, testified that McBee told him that Bradford shot the weapon.

1. In Russell's first two enumerated errors, she argues that Bradford is not immune from suit because her use of deadly force was a ministerial act, rather than a discretionary one. We disagree.

Although the trial court did not specify the reason for its ruling in its order, we begin our analysis with a discussion of qualified immunity because our Supreme Court has held that "a court must consider as a threshold issue whether the officer is entitled to qualified immunity from personal liability in a lawsuit for damages."[2] The doctrine of qualified immunity stems from the 1991

---

[2] *Cameron v. Lang*, 274 Ga. 122 (549 SE2d 341) (2001). Suits against public employees in

amendment to the Georgia Constitution, which provides, in pertinent part:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[3]

The doctrine has developed primarily in Georgia through case law.[4] In its essence, qualified immunity mandates that a public employee is not immune from suit when he performs ministerial acts negligently or performs ministerial or discretionary acts with malice or an intent to injure; rather, he or she is immune from suit only for the negligent performance of discretionary acts.[5]

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.[6]

Russell contends that Bradford failed to perform a ministerial act, i.e., protect innocent bystanders, such as the decedent in this case. The law does not support this contention. In *Gilbert*,[7] our Supreme Court concluded that an officer's act of rushing to respond to an emergency call was discretionary.[8] In *Cameron*,[9] the Court deemed discretionary the officers' decision to engage in a high speed

---

their personal capacities involve official or qualified immunity while those against them in their official capacities involve sovereign immunity. See *Gilbert v. Richardson*, 264 Ga. 744, 749-750 (4) (452 SE2d 476) (1994).

[3] Ga. Const. Art. I, Sec. II, Par. IX (d).

[4] *Gilbert*, supra at 752 (6).

[5] See id. at 753 (6).

[6] (Citations omitted.) *Murphy v. Bajjani*, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007). See also *Gamble v. Ware County Bd. of Ed.*, 253 Ga. App. 819, 824 (2) (b) (561 SE2d 837) (2002).

[7] Supra.

[8] Id. at 753 (6).

[9] Supra.

pursuit against persons suspected of stealing a car.[10] Our Supreme Court noted in *Cameron* its holdings in *Merrow v. Hawkins*[11] that a law enforcement officer exercises discretion in entrusting a car to a jail inmate,[12] and in *Kidd v. Coates*[13] that an officer's conduct of firing a gun at a suspect while executing a search warrant is deemed discretionary.[14] In each of these cases except *Kidd*,[15] an innocent bystander was injured when the officer performed his or her duties.[16] Accordingly, here, we conclude that Bradford's decision to pursue Corbett was a discretionary act. Therefore, Bradford is immune from suit unless she acted with malice or an intent to injure.[17]

Russell argues that Bradford is not protected by qualified immunity because she violated the Department's policy on the use of deadly force,[18] and that such violation constituted a wilful and wanton act. However, the 1991 amendment specifies the actions that remove the protection of immunity — those done with actual malice or with actual intent to cause injury. Our Supreme Court has construed the term " 'actual malice' [as requiring] a deliberate intention to do wrong."[19]

Russell has presented no evidence that Bradford acted with actual malice or intent to cause injury. Russell relies instead on *Truelove v. Wilson*[20] for the proposition that "[p]roof of wilful or

---

[10] Id. at 125 (2).

[11] 266 Ga. 390 (467 SE2d 336) (1996).

[12] Id. at 391 (1).

[13] 271 Ga. 33, 34 (518 SE2d 124) (1999).

[14] *Cameron*, supra at 125 (2).

[15] Supra (police shot owner of home where they were executing a no-knock search warrant).

[16] See *Gilbert*, supra at 745 (plaintiffs injured when officer was responding to an emergency call); *Cameron*, supra at 122-123 (companion case where both plaintiffs were injured in connection with an officer's high speed chase); *Merrow*, supra at 391 (plaintiff injured by car driven by inmate who had been given car keys by officer).

[17] See *Gilbert*, supra at 752 (6).

[18] The policy provides that "a person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat of force is necessary to defend himself or a third person against such other's imminent use of unlawful force." Specifically, the policy provides that deadly force is justified when it is intended or likely to cause death or great bodily harm if the officer using the deadly force believes that such force is necessary to prevent death or serious physical injury to him/herself, or a third person. The policy explicitly provides that deadly force is not justified in the following situations:

a. Warning shots are not permitted[;] b. Use of deadly force is not justified against persons who have committed traffic violations, misdemeanors, and/or non-forcible felonies[;] c. Deadly force is not justified against "fleeing felons" who simply run away to avoid arrest unless the Deputy reasonably believes that the fleeing suspect's escape would create a continuing danger of serious physical harm to any person[; and] d. Deadly force is not justified when one shoots at a moving vehicle.

[19] *Merrow*, supra at 391.

[20] 159 Ga. App. 906 (285 SE2d 556) (1981).

wanton conduct will remove the shield of sovereign immunity."[21] But *Truelove* does not warrant the result urged by Russell. In that case, the plaintiffs' child was fatally injured when a metal soccer goal fell on her when she knelt to tie her shoe during physical education class.[22] Plaintiffs sued the school district, the board of education and its members, and several other individuals in their official capacities.

At the outset, we point out that the principle espoused in *Truelove* concerns sovereign immunity, not qualified immunity.[23] In *Truelove*, we reversed the denial of summary judgment to the defendants, finding evidence of gross negligence rather than wanton or wilful conduct, which would have defeated sovereign immunity.[24] Unlike the instant case, *Truelove* did not involve a public employee's personal liability and entitlement to official or qualified immunity. In *Truelove*, wilful and wanton conduct was defined as conduct that evidenced "a wilfull intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent."[25] However, in 1996, our Supreme Court removed reckless conduct from the category of actions that would defeat immunity. The Court concluded "that the drafters intended the 1991 amendment to exclude any liability for injuries and damages if officers and employees act with implied malice in the performance of their official functions,"[26] and explained "implied malice" as "conduct exhibiting a 'reckless disregard for human life.' "[27] Therefore, the principle in *Truelove* that sovereign immunity is not available in the face of wilful or wanton conduct is questionable after *Merrow*. Due to the absence of evidence that Bradford acted with actual malice or an intent to injure, we affirm the grant of summary judgment to Bradford on Russell's negligence and assault and battery claims and to the Department on Russell's negligence claim on the ground that Bradford was entitled to qualified immunity.

2. In her third enumerated error, Russell argues that the trial court erred in granting summary judgment on her respondeat superior claim. Again, we disagree.

The common law doctrine of sovereign immunity, adopted by this state in 1784, protected governments at all

---

[21] (Citation omitted.) Id. at 908 (4).

[22] Id. at 906.

[23] Id. at 907 (4).

[24] Id. at 907-908 (4).

[25] (Citation and punctuation omitted.) Id. at 908 (4).

[26] *Merrow*, supra at 392 (2).

[27] (Citations omitted.) Id.

levels from unconsented-to legal actions. The doctrine was given constitutional status in 1974, but the state remained absolutely immune from suit until 1983 after voters approved an amendment to the State Constitution waiving the sovereign immunity of the state or any of its departments and agencies in actions for which liability insurance protection was provided. In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity to the state and all of its departments and agencies, and this immunity is to prevail except as specifically provided therein.[28]

The doctrine of sovereign immunity also applies to counties.[29] However, because the defense of immunity is not delegable, "the official immunity of a public employee does not protect a governmental entity from liability under the doctrine of respondeat superior. A county may be liable for a county employee's negligence in performing an official function to the extent the county has waived sovereign immunity."[30] Because in this case, there is no evidence that the county has waived its sovereign immunity, the grant of summary judgment on the respondeat superior claim was appropriate. In both cases cited by appellant, *Gilbert*[31] and *Rodriguez v. Kraus*,[32] there was evidence that the county waived sovereign immunity to the extent of its liability coverage.[33]

3. Next, appellant challenges the trial court's grant of summary judgment to Sheriff Barrett and the Department on her claim for failing to instruct, train, and supervise Bradford. "[T]his Court has consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function."[34] Therefore, absent evidence of malice,[35] which has not been shown here, the Sheriff and the Department are entitled to sovereign immunity on these claims.

---

[28] (Citations, punctuation and footnotes omitted.) *Gilbert*, supra at 745-746 (1).

[29] Id. at 747 (2).

[30] (Citations omitted.) Id. at 754 (7).

[31] Supra.

[32] 275 Ga. App. 118 (619 SE2d 800) (2005).

[33] *Gilbert*, supra at 754 (7); *Rodriguez*, supra at 120.

[34] (Citation and footnote omitted.) *Harvey v. Nichols*, 260 Ga. App. 187, 191 (1) (a) (581 SE2d 272) (2003). See *Carter v. Glenn*, 249 Ga. App. 414, 417 (2) (548 SE2d 110) (2001); *Bontwell v. Dept. of Corrections*, 226 Ga. App. 524, 527-528 (4) (a) (486 SE2d 917) (1997); *McDay v. City of Atlanta*, 204 Ga. App. 621 (1) (420 SE2d 75) (1992).

[35] See *Merrow*, supra at 391; *Gilbert*, supra at 752 (6).

4. In her next error, Russell argues that the trial court should not have granted summary judgment to Bradford on the § 1983 claims. "It is 42 USC § 1983 that constitutes the controlling federal authority on the right of a citizen to recover damages for an alleged deprivation of his federal constitutional rights under color of state law."[36] In her complaint, Russell alleges violations of the decedent's Fourth, Fifth, Eighth, and Fourteenth Amendments. However, as pointed out by Russell in her brief, the United States Supreme Court has held that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[37] To establish liability under § 1983 based on a Fourth Amendment claim, Russell must show that Bradford seized the decedent and that the seizure was unreasonable.[38] The evidence does not support this claim; thus, the grant of summary judgment was correct.

5. In her final enumerated error, appellant argues that the trial court should not have granted the Sheriff and the Department summary judgment on her claim against them for failure to train Bradford in the use of nonlethal weapons under *Monell v. Dept. of Social Svcs.*[39] In that case, the United States Supreme Court concluded that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[40]

"To be actionable, a county employer's custom or policy must exhibit a 'deliberate indifference' to the rights of inhabitants. Moreover, the custom or policy must 'cause' the constitutional violation."[41] The

---

[36] *State Bd. of Ed. v. Drury*, 263 Ga. 429, 433 (2) (437 SE2d 290) (1993).

[37] (Emphasis in original.) *Graham v. Connor*, 490 U. S. 386, 395 (109 SC 1865, 104 LE2d 443) (1989). Accord *Byrd v. Cavenaugh*, 269 Ga. App. 612, 613-614 (604 SE2d 655) (2004).

[38] See *Brower v. County of Inyo*, 489 U. S. 593, 599 (109 SC 1378, 103 LE2d 628) (1989).

[39] 436 U. S. 658 (98 SC 2018, 56 LE2d 611) (1978).

[40] (Punctuation omitted.) Id. at 694 (II).

[41] *Thompson v. Chapel*, 229 Ga. App. 537, 538 (1) (494 SE2d 216) (1997), citing *City of Canton v. Harris*, 489 U. S. 378, 389 (III) (B), n. 9 (109 SC 1197, 103 LE2d 412) (1989) (failure to adequately train). See also *City of Cave Spring v. Mason*, 252 Ga. 3, 4-5 (310 SE2d 892) (1984).

Court stated in *City of Canton v. Harris*[42] that it is not sufficient "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip [that officer] to avoid the particular injury-causing conduct."[43] It concluded that "permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities — a result . . . rejected in *Monell*."[44] As Russell has offered no evidence that the Sheriff or the Department acted with deliberate indifference to a known risk of harm, the trial court's ruling on this claim was correct.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 16, 2009.

*Calvin D. Lowery*, for appellant.
*Coy J. Johnson, Jr., Rolesia B. Dancy, Robert D. Ware, Overtis H. Brantley*, for appellees.

