A10A2094. COSBY et al. v. LEWIS et al.

(708 SE2d 585)

DILLARD, Judge.

Richard Lewis and Priscilla Lewis, individually and as parents of Richard L. Lewis III, sued the Hancock County School District and several of its employees, including George Cosby and James Robbins,

in both their official and individual capacities, claiming that defendants' negligence caused the death of the Lewises' son. Following a defense motion, most of the defendants were dismissed on sovereign-immunity grounds. However, based on Cosby and Robbins's failure to file timely responsive pleadings, the trial court entered a default judgment against those two defendants in their individual capacities. Cosby and Robbins now appeal from the trial court's denial of their motion to set aside the default judgment, arguing that the judgment was a nullity because the court lacked both subject matter and personal jurisdiction, and alternatively, arguing that the court erred by not opening the default judgment on the grounds of excusable neglect and proper case. For the reasons set forth infra, we reverse the trial court's decision and remand the case for further proceedings consistent with this opinion.

The events underlying this appeal are unquestionably heart wrenching. In August 2006, Richard Lewis III and a group of his fellow classmates from Hancock Central High School traveled to Atlanta to attend an ROTC competition. Cosby and Robbins, both of whom were employees of Hancock Central High School, accompanied the students as chaperones. Shortly after arriving at the group's hotel and assisting the students with checking into their rooms, Cosby, Robbins, and a few of the students allegedly left the hotel premises to get something to eat. And while Cosby and Robbins were away, Lewis and several other students decided to go swimming in the hotel's pool. Shortly after entering the swimming pool, Lewis appeared to be in great distress and began drowning. Lewis was quickly pulled from the swimming pool and emergency medical technicians were called immediately. Tragically, neither the EMTs nor the emergency-room physicians at the hospital where Lewis was transported were able to revive him.

Thereafter, Lewis's parents filed suit against the Hancock County School District and several of its employees but subsequently dismissed their lawsuit without prejudice. The Lewises then refiled their wrongful-death action against the same defendants, including Cosby and Robbins in both their official and individual capacities. And while the school district and the district superintendent filed timely answers to this complaint, Cosby and Robbins did not file their answers until well after the deadline for doing so, as a result of some confusion regarding whether they had been served.

All of the defendants, including Cosby and Robbins, thereafter filed a motion to dismiss the complaint, arguing, inter alia, that the Lewises' claims were barred by the doctrines of sovereign immunity and official immunity. Upon considering this motion, the trial court entered an order dismissing the claims against Cosby and Robbins in their official capacities but granting a default judgment against them

in their personal capacities based on their failure to file timely answers.

Two days after the entry of the default judgment, Cosby and Robbins filed a motion to set aside the judgment entered against them in their individual capacities. In that motion, Cosby and Robbins argued that (1) the Lewises' claims were barred by the doctrines of sovereign immunity and official immunity, (2) the trial court lacked personal jurisdiction due to deficient service of process, and (3) the trial court should open the default on the grounds of excusable neglect and/or proper case under OCGA § 9-11-55 (b). Following a hearing on the matter, the Lewises filed a motion to dismiss the school district and several of its employees, which the trial court granted. And then, the trial court issued another order, ruling that Cosby and Robbins were entitled to immunity in their official capacities but were not entitled to immunity in their individual capacities because of their failure to file timely answers. In that same order, the court also found that service of process was not deficient and that Cosby and Robbins had not shown that the default should be opened pursuant to OCGA § 9-11-55 (b). Cosby and Robbins then sought and successfully obtained a certificate of immediate review from the trial court, and we granted their application for interlocutory appeal. This appeal follows.

1. Cosby and Robbins (hereinafter "appellants") contend that the trial court erred in failing to vacate the default judgment. Specifically, appellants argue that they are entitled to official immunity as employees of the school district, and therefore, the trial court lacked the subject matter jurisdiction to enter a default.

At the outset, we note that, absent an abuse of discretion, "we will not reverse a trial court's refusal to set aside a default judgment."[1] Nevertheless, "(t)he standard of review for a question of law on appeal is de novo," during which "we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[2] With these guiding principles in mind, we will now address the substance of appellants' argument.

In considering appellants' claim of entitlement to official immunity from this lawsuit, we begin by noting that our Supreme Court has held that "[t]he doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity."[3] The doctrine of

---

[1] *Jacques v. Murray*, 290 Ga. App. 334, 335 (1) (659 SE2d 643) (2008) (citation and punctuation omitted).

[2] *Fort v. Rucker-Fort*, 297 Ga. App. 3, 4 (676 SE2d 398) (2009) (citation and punctuation omitted).

[3] *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001); *see also Gilbert v.*

qualified immunity derives from a 1991 amendment to the Georgia Constitution, which provides in relevant part:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[4]

In expounding upon this doctrine, we have held that "qualified immunity mandates that a public employee is not immune from suit when he performs ministerial acts negligently or performs ministerial or discretionary acts with malice or an intent to injure; rather, he or she is immune from suit only for the negligent performance of discretionary acts."[5] Importantly, our Supreme Court has similarly concluded that—consistent with the United States Supreme Court's opinion in *Mitchell v. Forsyth*[6]—qualified immunity "is an entitlement not to stand trial rather than a mere defense to liability,"[7] and as such, a trial court "must consider as a threshold issue whether the officer is entitled to qualified immunity from personal liability in a lawsuit for damages."[8] Moreover, it is undisputed that the doctrines of sovereign immunity and official immunity are applicable to county-wide school districts and the employees of those districts.[9]

---

*Richardson*, 264 Ga. 744, 750 (4) (452 SE2d 476) (1994) ("(o)fficial or qualified immunity offers limited protection from suit to governmental officers and employees." (citation omitted)).

[4] Ga. Const. Art. I, Sec. II, Par. IX (d).

[5] *Russell v. Barrett*, 296 Ga. App. 114, 117 (1) (673 SE2d 623) (2009); *see also Gilbert*, 264 Ga. at 752 (6) (452 SE2d 476) (1994) (noting that "[t]he doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority").

[6] 472 U. S. 511, 526 (105 SC 2806, 86 LE2d 411) (1985).

[7] *Cameron*, 274 Ga. at 124 (1) (punctuation omitted).

[8] *Russell*, 296 Ga. App. at 116 (1) (citation and punctuation omitted); *see also Cameron*, 274 Ga. at 124 (1) (holding that a court should resolve the issue of a government employee's qualified immunity as early as possible in legal proceedings).

[9] *See Teston v. Collins*, 217 Ga. App. 829, 830-31 (1)-(3) (459 SE2d 452) (1995) (holding that sovereign immunity extended to school-district defendant and official immunity extended to employees); *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294 (454 SE2d 149) (1995) (same).

Notwithstanding the foregoing law, the trial court entered a default judgment against appellants in their individual capacities, finding that they were not entitled to the "defense" of official immunity. In so holding, the trial court erred. As noted supra, official immunity is not a mere defense but rather *an entitlement not to be sued* that must be addressed as a threshold matter before a lawsuit may proceed.[10] Indeed, the plain meaning of the 1991 amendment to the Georgia Constitution regarding official immunity clearly supports this conclusion by providing that

> [e]xcept as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. *The provisions of this subparagraph shall not be waived.*[11]

Furthermore, "merely naming a defendant individually in a complaint is not conclusive as to the capacity in which that defendant is sued."[12] Instead, "the reason for the lawsuit is the determinative factor as to a defendant's capacity."[13] And while appellants were sued in both their official and individual capacities, it is undisputed that the Lewises' wrongful-death suit arose from actions the appellants took in their official capacities as employees of the school.[14] Thus, the trial court erred as a matter of law in finding that the entry of the default judgment barred the appellants from being able to assert that official immunity protected them from the Lewises' wrongful-death action.[15]

Accordingly, we reverse the trial court's order denying appellants' motion to set aside the default judgment and remand the case to the trial court for a threshold determination as to whether

[10] *Cameron*, 274 Ga. at 124 (1); *Russell*, 296 Ga. App. at 116 (1).

[11] Ga. Const. Art. I, Sec. II, Par. IX (d) (emphasis supplied).

[12] *Teston*, 217 Ga. App. at 831 (3).

[13] *Id.*

[14] *See, e.g., Cooper v. Paulding County School Dist.*, 265 Ga. App. 844, 845 (595 SE2d 671) (2004) (holding that school principal, who was sued in his individual capacity, was entitled to official immunity); *Hemak v. Houston County School Dist.*, 220 Ga. App. 110, 112-13 (469 SE2d 679) (1996) (same); *Teston*, 217 Ga. App. at 831 (3) (holding that school employees, who were sued in their individual capacities, were entitled to official immunity in lawsuit arising out of classroom incident).

[15] *Cf. Bd. of Regents &c. v. Frost*, 233 Ga. App. 692, 695 (505 SE2d 236) (1998) (holding that because defendant had immunity, trial court lacked subject matter jurisdiction and was without authority to enter default judgment against defendant); *see also Fink v. Dodd*, 286 Ga. App. 363, 365 (1) (649 SE2d 359) (2007) (holding that a default does not preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover).

appellants' acts or omissions that allegedly led to Richard Lewis's death were ministerial or discretionary in nature. And while the Lewises argue on appeal that appellants' acts were indeed ministerial, we are unwilling to entertain this argument, given the complete lack of any evidence in the record on that particular issue. Additionally, even if such evidence were contained in the appellate record, the trial court is the more proper forum for any initial review of this evidence and analysis regarding this issue.

2. Appellants also contend that the trial court erred in failing to set aside the default judgment based on the lack of personal jurisdiction. Specifically, appellants argue that there is no order appointing a permanent process server in this case, and therefore, the Lewises' use of such a process server constituted a failure to perfect service. And because resolution of this enumeration of error in appellants' favor would negate the need for this case to be remanded, we now address the issue and hold that the trial court did not err in finding that service upon appellants was perfected.

In considering appellants' contention that the Lewises failed to perfect service, we begin by noting that the question of "[w]hether evidence is sufficient to overcome facts reflected in a return of service is a matter addressed to the discretion of the trial court."[16] Indeed, a return of service is prima facie evidence of personal service,[17] and it may only be set aside when the defendant presents evidence that is "the strongest of which the nature of the case will admit."[18] Furthermore, factual disputes regarding service of process "are to be resolved by the trial court, and the court's findings will be upheld if there is *any evidence* to support them."[19] Moreover, OCGA § 9-11-4 (c) provides that "[p]rocess shall be served by the sheriff of the county where the action is brought or where the defendant is found, or by his deputy, or by the marshal or sheriff of the court, or by his deputy, or by any citizen of the United States specially appointed by the court for that purpose."[20]

And while it is undisputed that appellants were served with the summons and complaint in this matter, they nevertheless argue that service of process was deficient because the process server used by the Lewises had not been properly appointed by the Superior Court of Hancock County. Additionally, appellants argue that service was

---

[16] *Bohorquez v. Strother*, 287 Ga. App. 98, 99 (650 SE2d 765) (2007) (citation and punctuation omitted).

[17] *See, e.g., Baughan v. Alaoui*, 240 Ga. App. 661, 663 (1) (524 SE2d 536) (1999).

[18] *Bohorquez*, 287 Ga. App. at 99 (citation and punctuation omitted).

[19] *Patel v. Sanders*, 277 Ga. App. 152, 153 (1) (626 SE2d 145) (2006).

[20] *Capra v. Rogers*, 200 Ga. App. 131, 133 (1) (407 SE2d 101) (1991) (punctuation omitted).

deficient because the process server filed sheriff's entries of service with the trial court instead of separate affidavits.[21] In response, the Lewises assert that a 2003 court order appointing the process server in question as a permanent process server for the Superior Courts of the Ocmulgee Judicial Circuit—which includes Hancock County[22]—authorized that process server to serve the complaint in this action. We agree.

Given the 2003 court order appointing the permanent process server, the entry of service, and the fact that appellants do not dispute that they were actually served with the complaint, we find that there was some evidence to support the trial court's ruling that the process server was authorized to serve appellants with the complaint in this action.[23] Moreover, whether the permanent process server was authorized to file the sheriff's entries of service rather than his own affidavits as proof of service bears no weight in determining whether proper service was in fact made. As this Court has previously held,

> [w]here there has been valid service and no return, the deficiency may be supplied before taking further steps in the cause. If there has been service and a voidable or defective return, it may be amended even after judgment, so as to save that which has been done under service valid in fact but incompletely reported to the court. *For in its last analysis it is the fact of the service, rather than the proof thereon by the return, which is of vital importance.* This comports with the well settled rule that the critical question is the fact of service and not the nature of the return. Thus, the actual facts control, and if jurisdiction was actually acquired over the persons of the defendants, that fact should govern. It is the fact of service which confers jurisdiction, and not the return, and the latter may be amended to speak the truth.[24]

Accordingly, the trial court did not err in finding that service of process was perfected in this matter.

---

[21] *See* OCGA § 9-11-4 (h) (2) (proof of service by a person other than a sheriff, marshal, or deputy shall be by such person's affidavit).

[22] OCGA § 15-6-1 (28) provides that the "Ocmulgee Judicial Circuit[ is] composed of the Counties of Baldwin, Greene, Jasper, Jones, Morgan, Putnam, Wilkinson, and Hancock."

[23] *See, e.g., Jacobson v. Garland*, 227 Ga. App. 81, 83-84 (1) (487 SE2d 640) (1997) (holding that affidavit of permanent process server, which detailed attempt to serve defendant's wife, constituted evidence to support plaintiff's claim that service was sufficient).

[24] *Newsome v. Johnson*, 305 Ga. App. 579, 583-84 (1) (699 SE2d 874) (2010) (punctuation omitted).

3. In light of our holdings in Divisions 1 and 2, we need not address at this time appellants' remaining enumerations of error.

*Judgment reversed and case remanded. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 23, 2011.

*Brock, Clay, Calhoun & Rogers, Randall C. Farmer*, for appellants.

*Adams, Jordan & Treadwell, Donald J. Jordan, Caroline W. Herrington*, for appellees.